IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MELISSA WILKERSON                                                                           PLAINTIFF

VS.                                                                    CIVIL ACTION NO. 3:13cv67-DPJ-FKB

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY                                                                         DEFENDANT

## REPORT AND RECOMMENDATION

Melissa Wilkerson brought this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration. Having considered the memoranda of the parties and the administrative record, the undersigned recommends that the decision of the Commissioner be affirmed.

### I. Procedural History

Wilkerson was born on November 25, 1973. She completed the twelfth grade in special education. Her past relevant work experience is as a poultry line worker, stock clerk, retail cashier, and assistant manager trainee. She filed for a period of disability, disability insurance benefits (DIB), and supplemental security income alleging an onset date of December 1, 2009. Her applications were denied initially and on reconsideration, and she requested and was granted a hearing before an administrative law judge (ALJ). On January 26, 2012, the ALJ issued a decision finding that Wilkerson is not disabled. The Appeals Council denied review, thereby making the decision of the ALJ the final

decision of the Commissioner. Wilkerson then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. The Decision of the ALJ and Analysis

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[1] He found that Wilkerson has the severe impairments of affective disorder, intellectual deficits, lumbar disc disease, and obesity. (R. 11).[2] At step three, the ALJ determined that Wilkerson does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404,

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)  whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)  whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3)  whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)  whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)  whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

[2] Citations reflect the original pagination of the administrative record.

2

Subpart P, Appendix 1. (R. 15). The ALJ found that Wilkerson has the residual functional capacity to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:  She must be able to sit and stand at will, she can perform only occasional crouching, crawling, kneeling, stooping, or climbing stairs, and she cannot climb ladders or ropes, although she can frequently balance. (R. 17).  The ALJ further found that Wilkerson has mental limitations such that she cannot cope with the stress of highly exacting tasks, cannot carry out complex job instructions, should have no more than occasional contact with the general public, and should not be required to write reports, read instruction manuals, or supervise others. (R. 17-18).  She can adjust to a work routine of simple instructions, simple tasks, and simple job decisions. (R. 18).  At step four, the ALJ determined that this RFC precludes Wilkerson from being able to perform her past relevant work. (R. 23).  Relying upon the testimony of a vocational expert, the ALJ determined that Plaintiff can perform alternative work and is therefore not disabled. (R. 23-24).

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[3] In her

---

[3] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the

memorandum, Wilkerson makes two arguments: (1) That the ALJ's finding is not supported by substantial evidence because the hypothetical he posed to the VE and relied upon in making his decision did not reasonably incorporate all of the limitations found by the ALJ, and (2) that the ALJ failed to resolve a conflict between the testimony of the VE and the Dictionary of Occupational Titles (DOT).

*Hypothetical to VE.*  At step five of the sequential process, the ALJ considers whether the claimant can perform alternative work, given her RFC.  If the ALJ has found that the claimant's impairments preclude a full range of work at a particular exertional level, he must obtain expert vocational testimony or other similar evidence to establish whether there is alternative work that the claimant can perform.  *Fields v. Bowen*, 805 F.2d 1168, 1170.  In the present case, the ALJ called a VE to testify on this issue and posed a hypothetical to him in which he described the following individual:  a person of the same age, education, and work experience of Wilkerson, capable of performing work at the light exertional level, except that she must be allowed to sit or stand at will, can only occasionally crouch, crawl, kneel, stoop, or climb stairs, can never climb ladders, although she can frequently balance.  She cannot carry out complex job instructions or perform highly exacting tasks, but she can adjust to a work routine of simple instructions, simple tasks, and simple decisions.  Such person should have only occasional contact with the general public.  She is capable of receiving normal supervision and can interact with coworkers, but she cannot supervise others.  She should not be required to write reports

---

evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

or read instruction manuals.  (R. 56-58).  The VE testified that such a person could not perform any of Wilkerson's past work but that she could perform the jobs of small parts assembler, surveillance system monitor, and security clerk.  (R. 58-59).

A hypothetical posed to a VE must incorporate reasonably all of the disabilities recognized by the ALJ in order for the VE's opinion to constitute substantial evidence supporting the ALJ's decision.  *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Plaintiff's challenge to the hypothetical posed to the VE concerns the ALJ's failure to specifically include his finding that Plaintiff has moderate limitations in concentration, persistence and pace. "Concentration, persistence, and pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(3).  It is one of the four broad categories, known as the paragraph "B" criteria, found at 20 C.F.R. § 4041520a, the regulations setting forth what is commonly referred to as the "technique."  The technique is the method by which the ALJ determines the severity of a claimant's mental impairment.  It requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas that are considered to be essential to work:   (1) Activities of daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) episodes of  deterioration or decompensation in work or work-like settings.   In the present case, the ALJ used the technique to determine the severity of Wilkerson's mental impairment.  In so doing, one of findings he made was that Wilkerson has moderate limitations in concentration persistence, or pace.  (R. 16.) Plaintiff contends that the ALJ's failure to include this finding in his hypothetical requires

5

reversal or remand.  The Commissioner argues that the ALJ's inclusion in the hypothetical of Plaintiff's limitation to simple work involving only occasional contact with the public was sufficient to account for these limitations.

The regulations support the Commissioner's position.  As the ALJ recognized in his opinion, the technique is itself not an assessment of residual functional capacity.  *See* Social Security Ruling 96-8p.[4]  Rather, the technique is used to assess severity.  If the ALJ finds that the claimant's mental impairment is severe, and if he finds it does not meet or equal the severity of listed impairment, he is to go on to make a detailed assessment of the claimant's specific functional abilities *within* those broad categories.  In the present case, the ALJ's findings that Wilkerson could not follow complex instructions or perform highly exacting tasks represent the specific functional limitations within the broad category of limitations in concentration, persistence, or pace.  It was not necessary for the ALJ to restate this broad category to the VE.  It was sufficient that he included all of Plaintiff's specific functional limitations.

*Bordelon v. Astrue*, 281 Fed. App'x 418, 422-23 (5th Cir. 2008), supports this conclusion.  In *Bordelon,* the Fifth Circuit held that a hypothetical that included restrictions

---

[4]The ruling states as follows:  "The adjudicator must remember that the limitations identified in the "paragraph B" . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories . . . summarized in the [technique].  SSR 96-p8, 1996 WL 374184, at *4.

6

of low stress, simple one- to two-step instructions, and rare public interaction reasonably incorporated the claimant's moderate limitations in concentration, persistence and pace.[5]

---

[5] In *Bordelon*, the claimant's attorney failed to offer any alternative hypothetical to the VE. Thus, the VE never had an opportunity to state what difference, if any, the specific inclusion of a statement that the claimant had moderate limitations in concentration, persistence, or pace would have made to his opinion. In the present case, Wilkerson's attorney made a commendable attempt to establish that the inclusion of this limitation would make a difference:

> ATTY: If you . . . add to his honor's first hypothetical a moderate limitation in concentration, persistence, and pace that would pose a 20 to 25 percent reduction in productivity from an employer's normal, would there be any work that individual could do?
>
> VE: In the beginning, yes, but a 20 to 25 percent reduction in concentration, persistence, and pace would have an effect on the retention, job retention, so it would lead to termination.
>
> ATTY: Okay.
>
> VE: Unemployment.
>
> Q. So, a moderate impairment in concentration, persistence, and pace that would lead to a 20 to 25 percent reduction in productivity, that would be the reason they wouldn't be held on because the productivity wouldn't be there?
>
> VE: Yes.

(R. 59-60). If the attorney had asked the VE to consider the ALJ's hypothetical with the addition of a moderate limitation in concentration, persistence, or pace only, and if the VE had opined that such a person could not perform alternative work, Plaintiff would have a stronger argument. The problem, however, is that he did more: he added a significant reduction in productivity. The undersigned is not persuaded that a 20 to 25 percent reduction in productivity would be a necessary corollary of a moderate limitation in concentration, persistence, or pace. Thus, Plaintiff's questions, and the VE's responses, do not establish that the VE's opinion as to alternative work in response to the ALJ's hypothetical would have been different had the ALJ included the words "moderate limitation in concentration, persistence or pace."

The ALJ's opinion is comprehensive and well-reasoned, and he concluded that Plaintiff suffers from significant restrictions that limit her ability to perform a full range of work at the light exertional level. His hypothetical to the VE reasonably incorporated all of these restrictions and limitations; explicit, verbatim inclusion of every one of the ALJ's findings was not required.

*Conflict with the DOT.*   The VE identified three jobs existing in significant numbers that a person with Wilkerson's RFC could perform: small parts assembler, surveillance system monitor, and security clerk.[6]  The DOT identifies the required reasoning development level of small parts assembler and security clerk as level 2; the job of surveillance system monitor is classified as a level 3 job. Wilkerson argues that a conflict exists between the VE's testimony and the DOT, in that the VE's hypothetical presumed the ability to perform only simple work, and the jobs at a reasoning level above level 1 are incompatible with this limitation.  She further contends that the ALJ's limitation that she not be required to read written instructions is not compatible with jobs above level 1.

The DOT describes the three reasoning development levels as follows:

LEVEL 3: Apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations.

---

[6] The VE identified the relevant DOT classifications as follows:  small parts assembler, DOT. #723.684-018, surveillance system monitor, DOT #379.367-010, 1991 WL 673244; and security clerk, DOT #372.667-010. The VE's citation for security clerk as it appears in the transcript is incorrect; DOT #372.667-010 describes the job of airport security clerk, whereas the correct number for security clerk is DOT #372.266-010.  The ALJ cited to the correct number in his decision. Assuming that the VE actually miscited the code (rather than that the citation was the result of a transcription error), this error would not affect the ALJ's decision, as there is no requirement that the VE cite to or rely upon the DOT in rendering his opinion.

> LEVEL 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.
>
> LEVEL 1: Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DICTIONARY OF OCCUPATIONAL TITLES, App. C (rev. 4th ed. 1991).  In the opinion of the undersigned, Plaintiff has failed to establish any conflict.  It does not follow from the descriptions of level 2 and level 3 jobs that the work itself is complex.  As to Plaintiff's limitations concerning written instructions, the definitions of level 2 and level 3 jobs are written in the disjunctive: jobs at these levels require the ability to carry out written *or* oral *or* (in the case of level 3) diagrammatic instructions.  As long as an individual can follow instructions in one of these forms, he satisfies the requirements for these skill levels.

Finally, Plaintiff's counsel failed to take the opportunity at the hearing to question the VE about any possible conflict.  The Fifth Circuit has stated that a claimant "should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."  *Carey v. Apfel*, 230 F.3d 131, 46-47 (5th Cir. 2000).

### III. Conclusion

For the reasons stated herein, the undersigned recommends that the decision of the Commissioner be affirmed.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within

this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    Respectfully submitted, this the 22nd day of January, 2014.

                                      /s/ F. Keith Ball  
                                      UNITED STATES MAGISTRATE JUDGE